UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUDY E. CROMBIE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>Defendant. | Case No. C06-1278-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Judy E. Crombie appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-four year old woman who has received her GED. Administrative Record ("AR") at 23, 53. Her past work experience includes employment as a bus driver, nurses' aid, caregiver, custodian, security guard, sorter, packer/forklift operator, and a parks maintenance worker. AR at 23, 60, 74-81.

On January 25, 2002, plaintiff filed a claim for DIB and SSI benefits. AR at 17.

Plaintiff asserts that she is disabled due to diabetes, chronic obstructive pulmonary disease ("COPD"), post-traumatic stress disorder ("PTSD"), depression, anxiety and dysthmia. AR at 21.

The Commissioner denied plaintiff's claim initially and on reconsideration. Plaintiff requested a hearing, which took place on July 21, 2004. AR at 344-77. On May 17, 2005, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that she could perform her past relevant work. AR at 17-25.

Plaintiff requested administrative review of the ALJ's decision, which the Appeals Council denied. AR at 6. Consequently, the ALJ's May 17, 2005 decision serves as the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g). On September 6, 2006, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No.1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its

judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Crombie bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four.

At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On May 17, 2005, the ALJ issued a decision finding:

1. The claimant met the disability insured status requirements of the Act on December 30, 2001, the alleged disability onset date, and she has sufficient quarters of coverage to remain insured at least through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has diabetes mellitus; a right shoulder strain; chronic obstructive pulmonary disease (COPD); and an anxiety disorder NOS. These impairments are severe, but they do not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix No. 1.

4. The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible for the reasons set forth in the body of the decision.

5. The claimant retains the residual functional capacity to lift twenty pounds occasionally, and frequently up to ten pounds. She can stand/walk at least 2 hours in an 8-hour workday and sit for up to 6 hours in a workday. She should avoid frequent and repetitive use of her feet. She can occasionally climb ropes, ladders, and scaffolds, and frequently reach overhead with her right arm. She should avoid concentrated exposure to heights, hazards, or inhaled agents. She has no other significant physical restrictions. She can have occasional contact with the public and with co-workers.

6. The claimant's past relevant work as security guard did not require work functions precluded by her functional limitations, and the claimant can perform her past relevant work.

7. The claimant is not under a disability as defined in the Social Security Act.

AR at 24-25.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ fail to give appropriate weight to the psychological opinions in the record?

2. Did the ALJ err when he found that the plaintiff's testimony was not entirely credible?

3.  Did the ALJ err in his hypothetical to the Vocational Expert ("VE") and by obtaining a second, post-hearing opinion from an expert who did not have an opportunity to observe the plaintiff?

Dkt. No. 10 at 2.

## VII.  DISCUSSION

### A.  The ALJ Properly Evaluated the Psychiatric Evidence

The plaintiff asserts that the ALJ failed to evaluate properly the psychological and psychiatric medical evidence.  Specifically, plaintiff refers to the opinions of examining psychologists Kerry Bartlett, Ph.D., Ellen Lind, Ph.D., and psychiatrist Anselm Parlatore, M.D.  Instead, the plaintiff asserts, the Commissioner improperly relied upon the opinion of the DDS reviewing psychologist. Dkt. No. 10 at 4.

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751. "Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1). However, under certain circumstances, an examining physician's opinion can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

1. *Dr. Bartlett*

Dr. Bartlett saw the plaintiff once in October 1992 and once in July 2002. AR at 155-162. As the plaintiff points out, in his July 2002 evaluation, Dr. Bartlett did question "whether [the plaintiff] is indeed a viable candidate for competitive employment even in a part time capacity at this time due to the interaction of her physical limitations, cognitive limitations, social discomfort and depression, and the possibility of continued deterioration in physical health." AR at 160.

The ALJ did not give "substantial weight" to Dr. Bartlett's report. AR at 21. The ALJ noted that Dr. Bartlett failed to specifically mention particular physical and mental limitations that would support a finding of disablement. In addition, he found that the cognitive testing performed by Dr. Parlatore contradicted the suggestion that the plaintiff was disabled, as did the examination by Melinda Werny, ARNP, discussed further below. AR at 21, 153, 209-213.

2. *Dr. Lind*

Dr. Lind saw the plaintiff in 2004. AR at 319-22. Dr. Lind diagnosed the plaintiff with major depression, recurrent dysthymic disorder and personality disorder NOS. AR at 321. She also gave the plaintiff a GAF assessment of 38. *Id.*[2]

The ALJ gave Dr. Lind's assessment "scant weight." AR at 22. He concluded that the plaintiff's assessments were not as severe as assessed by Dr. Lind. First, the ALJ noted that the plaintiff did "reasonably well" at her mental status testing, and neither Dr. Parlatore

[2] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

nor Ms. Werny found significant cognitive problems, which would be otherwise expected with a GAF assessment of 38.[3] The ALJ concluded that Dr. Lind was overly reliant on the claimant's subjective reports, which he found not to be credible. AR at 22. Because the plaintiff's intact mental status testing would not support a GAF assessment of 38, the ALJ substantially discredited Dr. Lind's report.

3. *Dr. Coleman*

Dr. Coleman examined the plaintiff on January 25, 2002 and on August 6, 2002. AR at 137-44, 163-66. He concluded, among other things, that the plaintiff suffered from a personality disorder and marked limitations of judgment and decision-making. The ALJ did not give Dr. Coleman's report much weight, claiming it to be a check-the-box form. AR at 21.

4. *Dr. Parlatore*

Dr. Parlatore examined the plaintiff on June 21, 2002 and on January 9, 2004. AR at 150-54, 315-18. In his latter report, Dr. Parlatore concluded that the plaintiff was "chronically mentally ill." AR at 318. He also found symptoms were "severe" in areas of social withdrawal and physical complaints, and "marked" severity of depression and anxiety. AR at 316. He also determined that she had moderate severity in the areas of suicidal trends, anger, and motor retardation. *Id.* He also found that she had no cognitive limitations in her ability to understand and follow instructions, perform routine tasks, and exercise judgment and decision-making. AR at 317. Nevertheless, he noted severe limitations regarding abilities to respond to co-workers and supervisors, interact with the public, and respond to pressures and expectations of a normal work setting. *Id.* The ALJ considered the report of Dr. Parlatore, but discounted portions of the report, stating that it was a check-the-box type

---

[3] Dr. Lind's GAF assessment is also at odds with the assessments of other physicians. Dr. Parlatore assessed the plaintiff's GAF at 45 (AR at 154), Dr. Bartlett assessed the plaintiff with a GAF of 50 (AR at 161), and Ms. Werny assigned a GAF assessment of 56 (AR at 213), as did the Whatcom Counseling and Psychiatric Clinic. AR at 276

of report, and also noted that the plaintiff activities demonstrated that she was able to go out in public when she wanted to. AR at 21.

5. *Whatcom Counseling and Psychiatric Clinic*

The plaintiff was also seen by the Whatcom Counseling and Psychiatric Clinic. AR at 276-314. She presented as flat, withdrawn or passive, and slow, and described slow memory. AR at 280. Her GAF was assessed at 56. AR at 276. The ALJ concluded that the report was a "fairly good assessment" of the plaintiff, although he concluded that the diagnoses suggested an anxiety disorder rather than an affective disorder. AR at 21.

6. *ARNP Werny*

In 2003, the plaintiff received a psychiatric evaluation from Melinda Werney, ARNP. She found that the plaintiff suffered from dysthymic depression and anxiety, but did not find that the plaintiff suffered any significant concentration, attention, or memory difficulties. She also diagnosed PTSD and rated the plaintiff with a GAF assessment of 56. AR at 213.

7. *Conclusion Regarding Medical Evidence*

As to the plaintiff's mental impairments, the ALJ concluded that the plaintiff did have an anxiety disorder NOS, and that the disorder was severe, but did not meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix No. 1. AR at 24. In his RFC analysis, he also determined that her impairment in this regard meant that she should be limited to only occasional contact with the public and co-workers. *Id.*

The plaintiff asserts that the ALJ improperly evaluated the medical evidence and that the plaintiff should have been found to have met a Section 12.04 Listing for Affective Disorders. This listing requires that the plaintiff demonstrate that she meet at least two of the following criteria: (1) marked restrictions of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of deterioration or decompensation, each of extended duration. The plaintiff asserts that criteria 2 and 3 were established in this case.

Although there is evidence suggesting that the plaintiff suffers from marked difficulties in maintaining social functioning, the evidence indicating that the plaintiff suffers marked difficulties in maintaining concentration, persistence or pace is lacking. Indeed, as the ALJ found, the plaintiff does not appear to have cognitive deficits. AR at 21, 22. In addition, the ALJ summarized the medical reports and concluded that the plaintiff did not suffer and impairment or combination of impairments that met or equaled a listing. The summarization of medical reports is suggestive that an ALJ did not fail to consider the combined effect of the plaintiff's impairments. *Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984).

The role of this Court is limited. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* While it is possible to interpret the evidence as urged by the plaintiff, it simply cannot be said that this is the only rational interpretation. The ALJ did not err in his assessment of the medical evidence or the plaintiff's RFC.

B. The ALJ Did Not Err in His Adverse Assessment of the Plaintiff's Credibility

The ALJ found that the plaintiff was not entirely credible in her statements regarding her impairments and their impact on her ability to work. AR at 24. On appeal, the plaintiff objects and asserts that this finding is not supported by substantial evidence. Dkt. No. 10 at 6-8.

A determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996).[4] First, the ALJ must determine whether there

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are binding on SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given

is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

In this case, the ALJ found that the plaintiff's testimony about her limitations was not entirely credible. In doing so, the ALJ noted that the plaintiff's subjective complaints were inconsistent with her activities of daily living. The ALJ cited that plaintiff could drive a vehicle daily, shop, fish, play pool and throw darts, and concluded that she could get out when she wanted and could be fairly active. AR at 22. The plaintiff challenges these findings, asserting that they were included in a form completed "long before" her July 2004 hearing. Dkt. 10 at 7. The forms were completed in October 2002, after her alleged onset

deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

date of December 30, 2001. AR at 109, 17. The ALJ is permitted to draw an adverse inference as to the plaintiff's credibility when the claimant is able to engage in daily activities inconsistent with an alleged impairment. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In addition, the ALJ found the plaintiff failed to comply with certain treatment recommendations and also noted that one of her physicians suspected that the plaintiff's report that prescribed oxycodone was stolen from her car was not true. AR at 20, 172. Failure to comply with treatment recommendations is a relevant factor in assessing credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Burch*, 400 F.3d at 681.

The ALJ is charged with assessing credibility. The ALJ's adverse credibility determination is supported by substantial evidence, and must be affirmed.

C. <u>The ALJ Did Not Err in His Hypothetical Question and in Seeking a Second, Post-Hearing Vocational Opinion From an Expert Who Did Not Have a Chance to Observe the Plaintiff</u>

The final assignment of error relates to the questions posed to the VE. At the hearing, the VE testified that the plaintiff could perform two of her past jobs, that of being a security guard and a cannery worker. AR at 23. However, the ALJ incorrectly assessed the plaintiff's age. As a result, after the hearing, he propounded interrogatories regarding the plaintiff's impairments, gave plaintiff's attorney an opportunity to add to the interrogatories, and submitted them to a new VE. AR at 128.

Plaintiff objected that the new VE did not have a chance to observe the plaintiff. As an initial proposition, the ALJ was not required to seek a VE opinion if a hypothetical person with the plaintiff's RFC was able to perform her past relevant work. SSR 00-4p, *available at* 2000 WL 1898704, at *2. Moreover, even if the ALJ was required to call a VE, the opinions of the VE are not based on the VE's observation of the plaintiff. Instead, the ALJ is required to pose a hypothetical that identifies the limitations of the plaintiff, and as long as that hypothetical is based on medical assumptions supported by substantial evidence in the record,

the ALJ has complied with his obligations. The ALJ is free to reject assumptions in the question that are not supported by substantial evidence. *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). In this case, the ALJ properly evaluated the medical evidence and posed a hypothetical that included all of the limitations found. In addition, the plaintiff has not identified any authority for the proposition that the failure to observe the plaintiff precludes reliance on the testimony provided. Testimony of a VE was not required. However, even if required, the ALJ did not err in his hypothetical or in submitting interrogatories to a new VE who did not actually see the plaintiff.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED. A proposed order accompanies this Report and Recommendation.

DATED this 28th day of June, 2007.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge